### Lewis & Herrick *vs.* Chapman.

Where persons are engaged in a business in which credit, and a character for punctuality, are important, a communication addressed to their creditors, with whom they are in the habit of dealing, in these words—" Confidential.   Had to hold over a few days, for the accommodation of L. & H."—is calculated to affect injuriously their character, and. credit as business men; and if false, it is libelous.

In an action for a libel, evidence of the pecuniary circumstances of the defendant, and his standing in community, is admissible, as bearing upon the extent of the injury, if for no other purpose.

MOTION by the defendant for a new trial, upon a case.   The action was for the publication of a libel in the following words, contained in a postscript to a letter from Sisson & Chapman to Cromwell, Haight & Co.: " *Confidential.*   Had to hold over a few days, for the accommodation of L. & H."   Sisson & Chapman were bankers, at Lyons, and the plaintiffs were merchant tailors, residing at the same place.   Cromwell, Haight & Co., merchants in New York, had forwarded to Sisson & Chapman, for collection, a note for $100, made by Lewis & Herrick, for goods purchased, and due April 19, 1851.   The letter, to which the postscript was appended, was dated April 26, 1851, and inclosed the proceeds of the plaintiffs' note.   The plaintiffs alleged, in their complaint, that they paid the note on the 19th of April, the day it fell due, but that Sisson & Chapman retained the avails thereof in their hands, and did not remit the same to Cromwell, Haight & Co. until the 26th of April, when the defendant wrote the letter containing the postscript complained of.

The answer admitted that Sisson & Chapman were bankers at Lyons.   It admitted the making of the note and its delivery to Sisson & Chapman for collection, and that it became due April 19, 1851.   It denied that the plaintiffs paid the note in full to Sisson & Chapman at its maturity, but alleged that they paid on said note, on the 19th of April, 1851, only six dollars and eight cents; and that they paid thereon, on the 22d of the same month, 35 dollars, and on the 25th they paid the balance due on said note ; and that on the 26th of the same month Sisson & Chapman remitted the avails to Cromwell, Haight & Co.

It admitted the writing of the words charged as libelous by the defendant, and claimed that Sisson & Chapman were the agents of Cromwell, Haight & Co., and that the words were written to explain the delay in not transmitting funds, &c.; and that the communication was in all respects a privileged one. It alleged that Sisson & Chapman did hold over a few days on said note for the accommodation of the plaintiffs, and that the words alleged to be libelous were true. It denied all malice, and alleged that the plaintiffs were not injured by said communication.

For a second defense, the answer alleged that the plaintiffs kept a bank account with Sisson & Chapman, and were accustomed to have notes made by them sent to S. & C. for collection, and that the plaintiffs were often short of funds, and were accommodated by Sisson & Chapman, giving them time to pay such notes; that at the time this note became due they were short of funds, having on the 19th of April only $6.08 on deposit, which was not enough to pay the note, and that to accommodate them Sisson & Chapman consented not to protest said note, but gave time to the plaintiffs to pay it, and that they deposited $35 on the 22d of April, and enough to fully pay it on the 25th of April; and that on the 26th of April, Sisson & Chapman remitted the funds to Cromwell, Haight & Co. It further alleged that the plaintiffs continued to do business with Sisson & Chapman, and made no complaint of any injury, &c.

The cause was tried at the Wayne circuit, in October, 1853, before the Hon. T. R. STRONG, and a jury. The plaintiffs proved the publication of the alleged libel. It was proved that the plaintiffs kept an account with Sisson & Chapman, depositing moneys with them from time to time, and drawing checks against the same. And that on the 19th of April the plaintiffs drew their check upon Sisson & Chapman for $100, and delivered the same to a clerk in the banking office of S. & C. and received from him their note. Evidence was given by the defendant tending to show that the plaintiffs had not, at the time, sufficient funds in the hands of S. & C. to meet the check; which was attempted to be rebutted by the plaintiffs, by proof that there was an understanding between the parties that the

plaintiffs might overdraw their account when they desired to do so, and that the overdrafts should be paid; and that such had been the practice.

The justice charged the jury, among other things, that the postscript to the letter from Sisson & Chapman to Cromwell, Haight & Co. inclosing the draft was libelous, if the jury should find that it was false; and that unless the jury should find the matter contained in said postscript substantially true, they must find for the plaintiffs. That so far as malice was necessary to a right of action it was properly inferable, from the falsity of the words charged in the complaint as libelous. That the principal question for the jury was, as to the truth or falsity of the matter of the postscript. That if the jury should be satisfied that the defendant and Sisson were under the necessity of holding on, by reason of the plaintiffs not furnishing funds to pay their note, then the defendant was entitled to a verdict; but if satisfied that the matter of the postscript was false, and that the defendant and his partner did not hold on by reason of the plaintiffs not paying the note on the 19th of April, the plaintiffs must recover. That in order to make the transaction of the 19th of April a payment, Johnson, the clerk of S. & C., must have been authorized by the principals of the bank to receive the check; he must have had authority to accept overdrafts. That as a clerk he had no authority, after the directions given by him as testified to by Sisson and Westfall, to receive the draft as payment of the note, without special authority; and if Johnson received the plaintiffs' check, without having had authority from his principals, that was not a payment of the note. It was claimed by the plaintiffs that the defendant and his partner afterwards ratified the act of Johnson. That it was competent for them to do so, but the jury would look into the evidence, and see whether they did any thing equivalent to a ratification. If they ratified it, that was equivalent to giving authority in advance. That it was the duty of the bankers, as between them and Cromwell, Haight & Co., to have protested the note, in case of its non-payment, and to give Cromwell, Haight & Co. notice. That to omit this

made them liable to C., H. & Co.; but this liability would not affect the question involved in this action. That although they might have become liable to Cromwell, Haight & Co., yet they might have retained the draft for want of funds from the plaintiffs, and if so, the postscript was true. The counsel for the defendant excepted to portions of the charge. The jury rendered a verdict for the plaintiffs of $750.

*James C. Smith,* for the plaintiffs.

*W. H. Hecox,* for the defendant.

*By the Court,* JOHNSON, P. J. The plaintiffs were engaged in a business in which credit and a character for punctuality were essential, and it is obvious that a communication to their creditors, with whom they were in a habit of dealing, like the one contained in the postscript to the defendant's letter, was calculated to affect injuriously their character and credit as business men; and if false, it was libelous. The judge therefore properly refused to nonsuit the plaintiffs, and his charge to the jury was in this respect free from objection. The question of the truth or falsity of the statement was properly submitted to the jury. Malice was inferable if the statement was untrue. The term malice, in a legal sense, means a wrongful act done intentionally, without just cause or excuse.

I find no difficulty in sustaining any of the rulings at the circuit, unless it be that admitting evidence as to the pecuniary circumstances of the defendant. The objection was general, to any evidence showing the pecuniary circumstances of the defendant. The plaintiffs were not called upon to state the particular object of introducing the evidence; and if it was pertinent or competent for any purpose, the ruling should be sustained. The question then arises, is evidence of the pecuniary circumstances and standing of the defendant in the community, admissible as evidence in actions of this character, for any purpose? In a case recently decided in the court of appeals, (*Dain* v. *Wycoff,* 3 *Selden,* 191,) Gardiner, justice, seems to be clearly

of opinion that such evidence is incompetent. He remarks that it has been the custom at the circuit to admit evidence of this character, but that he could discover no authority for the practice in the elementary books. On this point, however, the other judges expressed no opinion, and the case was decided upon another ground. This point was not, therefore, decided, and however persuasive the opinion of the learned judge may be, and it is certainly entitled to great consideration in the discussion of the question, it still remains to be determined whether the ruling of the learned justice upon the trial is sanctioned by authority, as well as by usage at the circuit. *Dain* v. *Wycoff* was an action for seduction. In *Myers* v. *Malcolm,* (6 *Hill,* 292,) which was an action to recover damages occasioned by the explosion of gunpowder, it was held that such evidence was inadmissible; but the decision was put upon the ground that in that case the plaintiff was entitled to recover no more damages than he had actually sustained. There can be no doubt that the decision was right in that case, as the plaintiff was limited in his recovery to the actual loss and injury he had sustained, and the character or standing of the defendant was in no way involved in the subject matter of the litigation. But that decision does not control this case, because here, whatever may be said in regard to the right to recover punitory or vindictive damages, it is clear that the plaintiffs, if they could recover at all, could recover not only for the injury done to their credit, but for the injury and mortification to their feelings, and their dishonor in business engagements.

Greenleaf, in his able treatise on the law of evidence, while he denies the right of a plaintiff to recover damages inflicted merely as a punishment upon the defendant by way of example, independently of the injury to the mind, body or estate of the plaintiff, and in that sense punitory, yet admits that wherever the defendant's rank, wealth or influence in society would naturally tend to aggravate the injury complained of and increase its extent, evidence of such facts is pertinent to the issue. (2 *Greenleaf's Ev.* §§ 269, 89.) And he puts the cases of actions of slander and seduction, and the like, as those in which

the character of the parties is necessarily involved in the nature of the action. But this evidence, he insists, is proper by way of showing the extent of the injury, and not for the purpose of establishing the defendant's ability to pay. It has been decided, both in Massachusetts and Connecticut, that the ability and standing of a defendant were material facts, to be taken into account in estimating the injury in an action of slander. (*Bennett* v. *Hyde*, 6 *Conn. R.* 24, 27. *Shute* v. *Barrett*, 7 *Pick.* 86. *Reed* v. *Davis*, 4 *Id.* 216.) In *Bull. N. P.* 13, it is laid down that evidence of the circumstances of the defendant is admissible, in order to increase the damages. This is cited in Phillips' Evidence without disapprobation. (2 *Phil. Ev., C. & Hill's ed.* 258.) It seems to me therefore clear, from authority, that the evidence was properly admitted, as bearing upon the extent of the injury, if for no other purpose. It is apparent that a statement of this kind, coming from a banker of wealth, whose solvency was unquestioned, would operate far more extensively and injuriously than the same statement from a less responsible and less influential source. I do not see that the question of vindictive damages, or smart money, by way of example or of punishment to the defendant merely, is raised by the case. Nothing was said upon the subject in the course of the trial, or by the justice in his charge to the jury, and no request seems to have been made to him to charge one way or another upon the subject. Whatever may be the rule in respect to vindictive damages as distinguishable from damages compensatory in their character, it has never been denied, that I am aware of, that, in actions of libel and slander, a plaintiff is entitled to recover not only for the injury done to his estate, but to his character, his feelings, his bodily health, and other injuries of that description, which are nevertheless real and actual because indefinite. Damages for injuries of this description may fairly be regarded as compensatory in their character. And there is nothing in this case, unless it be the amount of the verdict, to show that the jury added any thing by way of punishment and example merely. It may well be that they, finding as they must have done, that the defendant delayed the remittance in consequence of his own

necessities and not by reason of the laches of the plaintiffs, would conclude that the plaintiffs would feel an imputation upon their credit from such a quarter, and under such circumstances, much more keenly than they would one made under different circumstances, equally false; and that all the damages awarded were by way of compensation alone. The amount of the verdict does not necessarily determine the basis upon which the jury placed their estimate. It is clear, I think, that the communication did not belong to the privileged class. It was wholly voluntary on the part of the defendant. He was not required to make any apology for the delay, but if he undertook voluntarily to do so, he was bound to state the case truly. The fact of the payment of the note by the plaintiffs was the principal subject of controversy upon the trial, and there was conflicting evidence, which was fairly submitted to the jury, and the verdict cannot be interfered with for want of evidence to support it.

The verdict is certainly large, and I should have been better satisfied with it had it been less; but the court cannot set it aside on that ground, without unwarrantably invading the province of the jury. A new trial must therefore be denied.

[MONROE GENERAL TERM, March 5, 1855. *Johnson, Welles* and *T. R. Strong,* Justices.]